IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| vs. | : | |
| | : | NO.  07-CR-383 |
| STEVEN USUAMA ROSE | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM OPINION & ORDER**

GOLDEN, J.                                                    MARCH 7th , 2008

Before the Court is defendant's motion to dismiss for violation of his right to a speedy

trial, and defendant's motion *in Limine* to preclude the government's use of his prior convictions

to impeach him should he testify at trial.  The Court will deny the motions for the reasons that

follow.

**FINDINGS OF FACT**

After conducting a hearing on December 12, 2007, at which it had the opportunity to

observe the demeanor and evaluate the credibility of government witness Lancaster Assistant

District Attorney Carl Kenneth Brown, II, and upon review of the record and the facts that the

parties have agreed to therein, the Court makes the following Findings of Fact:

1.        On August 5, 2005, Lancaster City police officers arrested defendant after he

allegedly conducted a narcotics transaction with an undercover police officer.

2.        The Lancaster District Attorney's Office charged defendant with delivery of a

controlled substance, possession with intent to deliver a controlled substance, and person not to

possess a firearm.

3.      Pursuant to the Lancaster District Attorney's Office's policy for felony narcotics prosecutions involving firearms, Assistant District Attorney Brown and others at the District Attorney's Office reviewed the case for possible federal prosecution in mid to late August of 2005.

4.      The Lancaster District Attorney's Office referred the case to the United States Attorney's Office for the Eastern District of Pennsylvania on November 1, 2005.

5.      The Lancaster District Attorney's Office did not refer the case for federal prosecution until November 2005 because it was waiting to receive records concerning defendant's prior arrests in Lancaster County and Queens County, New York.

6.      On January 19, 2006, the United States Attorney's Office for the Eastern District of Pennsylvania preliminarily adopted the case for federal prosecution.

7.      Thereafter, Brown and others at the Lancaster District Attorney's Office again discussed prosecuting the case federally.

8.      During these discussions, the possibility was raised that defendant may be related to another United States Attorney's Office investigation, and the Lancaster District Attorney's Office considered whether coordination of the two cases was appropriate.

9.      The Lancaster District Attorney's Office ultimately decided not to coordinate defendant's prosecution with the other United States Attorney's Office investigation.

10.     Between December 2005 and June 2006, the Lancaster County Court of Common Pleas held monthly pretrial conferences for this case.

11.     Defendant sought and received continuances at each of the monthly conferences between December 2005 and June 2006.

2

12.     The Lancaster District Attorney's Office sent a State Alternative Prosecution Letter ("SAP Letter") to defendant's attorney on March 13, 2006.

13.     The SAP Letter presented defendant with the optionS to plead guilty to his state charges or proceed with a federal prosecution.

14.     Defendant's attorney requested additional time to review the SAP letter because his wife was ill.

15.     After his counsel reviewed the SAP letter, defendant informed the government that he intended to plead guilty to the state charges, and the Lancaster County Court of Common Pleas scheduled a guilty plea hearing for May 12, 2006.

16.     The Lancaster County Court of Common Pleas postponed the May 12, 2006 guilty plea hearing two or three times at defendant's attorney's request due to his continuing family medical issues, and the court eventually rescheduled the hearing for September 18, 2006.

17.     At the September 18, 2006 plea hearing, the defendant informed the Lancaster District Attorney's Office that he did not intend to plead guilty, and instead sought to negotiate a plea bargain.

18.     Negotiations between defendant and the Lancaster District Attorney's Office proceeded during November and December 2006, but broke down sometime in late 2006 or early 2007.

19.     After the breakdown of negotiations, Assistant District Attorney Brown again recommended the case for federal prosecution.

20.     The Lancaster District Attorney's Office assigned Special Assistant District Attorney Christopher Lechner to this matter in the spring of 2007 pursuant to the District

Attorney's Office's case priority list.

21.    The Lancaster District Attorney's Office employs approximately 28 Assistant District Attorneys, of which two serve as part-time Special Assistant District Attorneys approved to handle cases designated for potential federal prosecution.

22.    Special Assistant District Attorney Lechner's spring 2007 assignment to this matter was the earliest that the Lancaster County District Attorney's Office could have assigned a Special Assistant District Attorney to defendant's case consistent with the Office's case priority list and the number of available Special Assistant District Attorneys.

23.    The case was continued several more times because either (a) the Lancaster County Special Assistant District Attorneys had more pressing cases or (b) the United States Attorney's Office for the Eastern District of Pennsylvania needed additional time to prepare the case for a federal indictment.

24.    On June 28, 2007, defendant filed a motion to dismiss under Rule 600 of the Pennsylvania Rules of Criminal Procedure, which requires that a defendant be brought to trial within 365 days of indictment, less any time attributable to defendant.

25.    On July 10, 2007, a grand jury indicted defendant in the United States District Court for the Eastern District of Pennsylvania for narcotics distribution, possession of a firearm in furtherance of a drug crime, and felon in possession of a firearm.

26.    On August 6, 2007, the Commonwealth dismissed defendant's state charges, rendering his Rule 600 motion moot.

# ANALYSIS

### 1.      Speedy Trial Motion

On September 11, 2007, defendant filed a motion to dismiss his indictment for violation of his speedy trial rights under the Sixth Amendment to the Constitution.  The government opposes defendant's motion in the first instance on the grounds that defendant's state arrest and custody do not trigger the Sixth Amendment speedy trial guarantee.  Although the Third Circuit Court of Appeals has never so held, the government provides precedent from six other circuit courts supporting this position.  See United States v. Marler, 756 F.2d 206, 211 (1st Cir. 1985) (finding "that [defendant's] Sixth Amendment rights did not attach until his federal indictment"); United States v. Mejias, 552 F.2d 435, 441-43 (2d Cir. 1977) ("[T]he date of the federal indictment and arrests[] is the date which should trigger the commencement of the speedy trial periods in issue."); United States v. Hendricks, 661 F.2d 38, 40 n.1 (5th Cir. 1981) ("The Sixth Amendment right to a speedy trial does not attach with appellant's arrest by Arkansas police"); United States v. Wallace, 326 F.3d 881, 885 (7th Cir. 2003) (holding that defendant's state arrest and indictment "does not start the Sixth Amendment speedy trial clock for purposes of the subsequent federal charge."); United States v. Cordova, 537 F.2d 1073, 1075 (9th Cir. 1976) (Ruling that defendant's "speedy trial right under the Sixth Amendment was not activated until the date of federal 'accusation.'"), cert. denied, 429 U.S. 960 (1976); United States v .Gomez, 67 F.3d 1515, 1521 (10th Cir. 1995) ("Arrest by state authorities on state charges does not trigger the speedy trial provisions of the Federal Constitution.").[1]  The circuit courts reason that because

---

[1] It is undisputed that defendant's state arrest does not trigger the provisions of the federal Speedy Trial Act either.  See 18 U.S.C. § 3161(c)(1); United States v. Ramos, 171 Fed. Appx. 928, 929-30 (3d Cir. 2006) (not precedential).

the "dual sovereignty doctrine provides that the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible," it would violate dual sovereignty to render a federal prosecution captive to the date of state-level indictment.  Marler, 756 F.2d at 211 (internal citations omitted).  At least one court in this district has recognized the overwhelming support for this position in the Third Circuit's sister courts, United States v. Charles, 2007 WL 4242090, at *3 (E.D. Pa. Nov. 29, 2007), and defense counsel conceded as much at oral argument.  It is thus clear that the Court should evaluate defendant's motion using the date of his federal indictment.[2]

Having settled on a beginning date for its analysis, the Court now turns to the government's second argument, which is that the factors set forth in Barker v. Wingo, 407 U.S. 511 (1972), favor denial of defendant's motion.  In reviewing a speedy trial challenge, Barker instructs courts to consider (1) the length of the delay; (2) the reason for the delay; (3) whether, when, and how the defendant asserted his speedy trial right; and (4) whether and to what extent the delay has prejudiced defendant.  Id. at 530.  The Supreme Court has observed that lower courts have generally found it appropriate to engage in a Barker analysis as the postaccusatory delay approaches one year.  See Doggett v. United States, 505 U.S. 647, 651 n.1 (1992).  The length of time between accusation and trial acts as a triggering mechanism, because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  Barker, 407 U.S. at 530.

The length of the delay in this case, beginning with defendant's July 2007 federal

---

[2] The Court is not deaf to defendant's concerns regarding the length of his state-level detention, but it is not this Court's place to rethink the concept of dual sovereignty.

6

indictment, is approximately eight months.  There is thus some argument that the <u>Barker</u> inquiry may end here.  <u>See</u>, <u>e.g.</u>, <u>United States v. Gerald</u>, 5 F.3d 563, 566 (D.C. Cir. 1993) ("under the circumstances of this case, we do not find the [eleven month] delay so long that it gives rise to a presumptive violation of [defendant's] Sixth Amendment rights."); <u>United States v. White Horse</u>, 316 F.3d 769, 774 (8th Cir. 2003) ("We conclude that a nine and one-half month interval is too short to be presumptively prejudicial."); <u>United States v. Lugo</u>, 170 F.3d 996, 1002 (10th Cir. 1999) ("we find that the delay of approximately seven months, even if not excusable, is not 'presumptively prejudicial' and, therefore, a <u>Barker</u> analysis is not necessary."); <u>United States v. Derose</u>, 74 F.3d 1177, 1184 (11th Cir. 1996) (finding "eight-month delay is insufficient to merit a Sixth Amendment speedy trial violation inquiry.").  In an abundance of caution, however, the Court will proceed with analysis of the remaining <u>Barker</u> factors.

Understanding the reasons for the delay requires a brief detour through the federal procedural history of this case.  After defendant's federal indictment, he filed a motion for extension of time to file pretrial motions (Docket Document No. 7), which the Court granted, giving him until September 4, 2007 to file.  On September 11, 2007, defendant filed six motions:

1. Motion *in Limine* to exclude evidence pursuant to Federal Rules of Evidence 401, 402, and 403 (Document No. 14);

2. Motion *in Limine* to exclude evidence pursuant to Federal Rule of Evidence 404(b) (Document No. 15);

3. Motion *in Limine* to exclude evidence pursuant to Federal Rule of Evidence 609 (Document No. 16);

4. Motion to bifurcate trial (Document No. 17);

7

5.    Motion to dismiss indictment (Document No. 18); and

6.    Motion for disclosure of Jencks Act material (Document No. 19).

Defendant also filed a motion to continue trial on September 14, 2007 (Document No. 28).  The government then sought additional time to respond to defendant's motions (Document No. 32).  After reviewing the government's responses, the Court ruled on four of the six pending motions on October 19, 2007 (see Document Nos. 42-44), and scheduled an evidentiary hearing on the motion to dismiss now before the Court for November 6, 2007 (Document No. 40).  At defense counsel's request, and with the assent of defendant (Document No. 45), the Court continued the hearing until December 12, 2007 (Document No. 49).

As this review demonstrates, aside from one government request to extend time to respond, all delays in this matter have been attributable to defendant, whether through his multiple requests for additional time or his half-dozen substantive pretrial motions.  The second Barker factor concerning the reasons for the delay therefore favors the government.

As to the third Barker factor, defendant first asserted his speedy trial right in June of 2007 when he filed his Rule 600 motion, and he filed the present motion to dismiss shortly after his federal indictment.  The Court thus finds that defendant has effectively asserted his speedy trial rights.

The final factor in the Barker analysis is prejudice to defendant's case resulting from the delay.  This is the most important factor because of the risk that defense witnesses may have died, disappeared, or forgotten relevant facts in the period between accusation and trial.  Barker, 407 U.S. at 532.  The Supreme Court has noted that "affirmative proof of particularized prejudice is not essential to every speedy trial claim," but it also warns that a postaccusatory delay "cannot

alone carry a Sixth Amendment claim without regard to the other <u>Barker</u> criteria." <u>Doggett</u>, 505

U.S. at 655.  Here, defendant has not been able to identify any particularized prejudice to his

defense.  He has pointed to no specific witnesses that are now unavailable and identified no

specific evidence available in July 2007 that is unavailable at present.  Moreover, the delay itself

is not prejudicial because it has only been eight months since indictment.  Having found no

prejudice, even in the delay itself, the Court finds that this factor weighs in the government's

favor.

       After reviewing the <u>Barker</u> factors, the Court must side with the government.

Defendant's postaccusatory delay was not prejudicial, his pretrial litigation strategy and several

continuance requests have been the primary reasons for the delay of his trial to this point, and

defendant has been unable to identify any prejudice to his defense.  Although defendant has

effectively asserted his speedy trial rights, the Court will deny his motion to dismiss because the

other <u>Barker</u> factors weigh heavily in the government's favor.

       **2.**        **Motion *in Limine***

       Defendant seeks to preclude the government from introducing evidence of his prior

convictions to impeach him if he testifies at trial.  In December 2001, defendant was convicted of

possession with intent to distribute crack cocaine in Lancaster County, and in January 2005,

defendant was convicted of criminal possession of a controlled substance in Queens County,

New York.

       Federal Rule of Evidence 609 provides that evidence of prior convictions punishable by

greater than one year imprisonment may be admitted to impeach a defendant if the probative

value of the evidence outweighs its prejudicial effect.  Fed. R. Evid. 609(a)(1).  Prior convictions

9

shall be admitted if an act of dishonesty must have been proven to establish one of the elements of the conviction.  Fed. R. Evid. 609(a)(2).  If the conviction is older than ten years, it may not be admitted unless the probative value, as supported by specific facts and circumstances, *substantially* outweighs the prejudicial effect of the evidence.  Fed. R. Evid. 609(b).

Defendant's prior narcotics convictions did not require the government to prove an element of dishonesty, so their admission is not required.  The convictions were within the last ten years, and thus Rule 609(b)'s heightened balancing standard does not apply, and they were punishable by imprisonment of more than one year.  The proper standard is therefore whether the prior convictions' probative value would outweigh their prejudicial effect.  In balancing probity against prejudice, a district court is to consider "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; and (4) the importance of the credibility of the defendant."  Gov't of the Virgin Islands v. Bedford, 671 F.2d 758, 761 n.4 (3d Cir. 1982).

Defendant argues that admission of the prior convictions would be unduly prejudicial because they do not bear on his character for truthfulness, and instead suggest that he is a professional criminal.  He also asserts that the similarity between his prior convictions and the present charges heightens the danger of prejudice, citing to, *inter alia*, United States v. Sanders, 964 F.2d 295, 297 (4th Cir. 1992).  Defendant further argues that his testimony in this matter will be crucial to contradicting the government's claim that he knowingly and intentionally possessed a controlled substance with intent to deliver it.

Defendant has no doubt made the case that his testimony will be important to his defense. It appears that defendant may be the only witness on his behalf, and his potential testimony

10

regarding whether he knowingly and intentionally possessed narcotics goes directly to the elements of the charges against him.  But it is also true that defendant's credibility will be crucial, see, e.g., United States v. Beros, 833 F.2d 455, 463-64 (3d Cir. 1987) (testifying defendant puts his credibility at issue), and the jury should have all appropriate evidence with which to determine the proper weight to ascribe to defendant's testimony.  Defendant's prior convictions are also close in time to the conduct precipitating the current charges.  Indeed, his most recent conviction occurred in January 2005, just eight months before Lancaster police arrested defendant for the instant offense.

Relevant precedent supports admission, as there are several cases admitting evidence of prior narcotics convictions to impeach defendants charged with similar crimes.  See, e.g., United States v. Johnson, 302 F.3d 139, 152 (3d Cir. 2002); United States v. Barrome, 1997 WL 786436, at *3 (E.D. Pa. Dec. 3, 1997), aff'd, 166 F.3d 1206 (3d Cir. 1998), cert. denied, 526 U.S. 1033 (1999); United States v. Hernandez, 106 F.3d 737, 739-40 (7th Cir. 1997); United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997); United States v. Smith, 49 F.3d 475, 478 (8th Cir. 1995); see also United States v. Murphy, 172 Fed. Appx. 461, 464 (3d Cir. 2006) (admitting prior narcotics conviction to impeach defendant charged with felon in possession of firearm) (not precedential); United States v. Sampson, 980 F.2d 883, 887 (3d Cir. 1992) (ruling on a Federal Rule of Evidence 404(b) motion that "[t]here is no question that, given a proper purpose and reasoning, drug convictions are admissible in a trial where the defendant is charged with a drug offense.").  In particular, Barrome found evidence of prior narcotics convictions relevant to a defendant's veracity because "a drug trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment,

11

whether the truth or a lie."  1997 WL 786436, at *4 (*citing* <u>United States v. Ortiz</u>, 553 F.2d 782,

784 (2d Cir.1977)); <u>see also</u> <u>Walden v. Georgia Pac. Corp.</u>, 126 F.3d 506, 523 (3d Cir. 1997)

("Rule 609 is premised on 'the common sense proposition that one who has transgressed

society's norms by committing a felony is less likely than most to be deterred from lying under

oath.'") (internal citations omitted; <u>Cordoba</u>, 104 F.3d at 229 ("prior convictions for drug

offenses are probative of veracity.").

      The leading case defendant cites is not only unbinding, but also distinguishable.  In

<u>Sanders</u>, the Fourth Circuit Court of Appeals found that the district court abused its discretion

when it allowed the government to cross-examine defendant, who was accused of assault with

intent to commit murder and possession of a knife or shank, regarding a prior conviction for

assault and shank possession.  964 F.2d at 296.  In explaining its ruling, the Fourth Circuit

emphasized that the defendant's prior offenses "had minimal if any bearing on the likelihood that

defendant would testify truthfully."  <u>Id.</u> at 298 (internal citations omitted).  It is true that a prior

assault conviction has little to do with a defendant's truthfulness, but here defendant has prior

convictions for narcotics trafficking that, as <u>Barrome</u> recognized, "suggest a life of secrecy and

dissembling."  1997 WL 786436, at *4 (internal citation omitted).  <u>Sanders</u> is thus unhelpful to

defendant because it did not involve prior convictions similar to those of the defendant at bar,

and defendant's prior crimes did not involve dishonesty.[3]

---

    [3] Defendant's additional precedent is distinguishable as well.  Several of the cases defendant cites did not involve prior narcotics convictions.  <u>See</u> <u>United States v. Seamster</u>, 568 F.2d 188, 191 (10th Cir. 1978) (prior burglary conviction); <u>United States v. Footman</u>, 33 F. Supp. 2d 60, 63 (D. Mass. 1998) (previous rape conviction).  In <u>United States v. Maisonneuve</u>, 954 F. Supp. 114 (D. Vt. 1997), the prior narcotics convictions at issue were substantially older than those in the present case, at six and nine years past, and the court left open the possibility that the government could introduce them to impeach defendant depending on the contents of his testimony.  <u>See id.</u> at 118 ("if Maisonneuve testifies that he has never been involved in drug activity or knows nothing about drugs or manners of distribution, evidence of the convictions would directly contradict such testimony.").  Finally, in <u>United</u>

Defendant finally argues that jurors will be unable to separate his prior convictions from the presently charged offenses.  But this assertion overlooks the possibility that the Court may avoid prejudice by providing a limiting instruction, which jurors are presumed to follow.  See, e.g., Shannon v. United States, 512 U.S. 573, 585 (1994).

After weighing the recency of defendant's prior convictions and their similarity to the present offense, and considering the importance of defendant's credibility and testimony, the Court concludes that evidence of his prior convictions is admissible to impeach him.

An appropriate Order accompanies this Memorandum Opinion.

---

States v. Wallace, 848 F.2d 1464 (9th Cir. 1988), the Ninth Circuit excluded a prior narcotics conviction, but its ruling emphasized that the district court had improperly applied the standard for admission of prior convictions to impeach.  See id. at 1473 ("the district court incorrectly assumed that the similarity of the prior conviction and the present charges weighed in favor of admissibility.").

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :
                                  :   CRIMINAL ACTION
            vs.                   :
                                  :   NO.  07-CR-383
STEVEN USUAMA ROSE                :
                                  :
              Defendant           :

**<u>ORDER</u>**

AND NOW, this 7th day of March, 2008, it is hereby ORDERED that:

1.      Defendant's Motion to Dismiss Indictment (Document No. 18) is DENIED; and

2.      Defendant's Motion to Exclude Evidence of Prior Convictions (Document No.

16) is DENIED.

BY THE COURT:

*S/THOMAS M. GOLDEN*
THOMAS M. GOLDEN, J.